# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|                              |   |                   |
|------------------------------|---|-------------------|
| KARISSA L. LEAKE,            | ) |                   |
| Plaintiff,                   | ) |                   |
| v.                           | ) | 10-cv-2306 (RCL)  |
| DAVID N. PRENSKY, *et al.*,  | ) |                   |
| Defendants.                  | ) |                   |

## MEMORANDUM OPINION

Before the Court today are defendants' motions to dismiss and intervenor's motion for declaratory relief. For the reasons set forth below, the Court will grant defendants their motions to dismiss and deny intervenor's motion for declaratory relief.

## I. BACKGROUND

On or about September 29, 2004, Karissa Leake purchased property located at 1428 Newton Street, NW, Washington, D.C. 20010 ("Property"). Compl. ¶ 6. To finance her purchase, plaintiff executed a Note in the amount of $150,500.00 and a Deed of Trust ("Deed") to secure the Note. Def. Capital One's Mot. Dismiss Ex. A at 1, Jan. 21, 2011, ECF NO. 6-1 ("Note").[1] Leake recorded the Deed of Trust securing the Note on September 29, 2004, with B.F. Saul. Mortgage Co. ("B.F. Saul") listed as the lender and defendant David N. Prensky listed as Trustee. Compl. ¶¶ 6–9.

---

[1] In deciding a motion to dismiss, a court may consider documents "upon which the plaintiff's complaint necessarily relies even if the document is produced not by the plaintiff in the complaint but by the defendant in a motion to dismiss." *Hinton v. Corrections Corp. of Am.*, 624 F. Supp. 2d 45, 46 (D.D.C. 2009). Leake's complaint relies on the Note and Deed, so the Court may consider them here.

At some point in time plaintiff became delinquent on her payments; she was served with several Notices of Foreclosure, and at the time of the most recent one owed $167,739.34 on the Note and was in default by more than $29,665.21. Def. Capital One's Mot. Dismiss Ex. D at 1, Jan. 21, 2011, ECF No. 6-4 ("Notice of Foreclosure"). Defendants Prensky and Capital One conducted a foreclosure sale on the Property, which plaintiff alleges was improper because the chain of title from B.F. Saul to Capital One is not recorded in the District of Columbia Recorder of Deeds or otherwise established. Compl. ¶ 10–15. Plaintiff asks the Court to (1) quiet title in her favor, (2) declare the foreclosure proceedings defective based on defendants' failure to record assignment of their interest in the Property, and (3) set aside the foreclosure proceedings because U.S. Treasury rules set forth in the Home Affordable Modification Program ("HAMP") say that a lender shall cease all foreclosure activities when the homeowner is in the loan modification process. Notice Removal Ex. A, at 1–2, Dec. 28, 2010, ECF No. 1 ("Compl."). Defendants have moved to dismiss for failure to state a claim upon which relief can be granted, arguing that they are entitled as Note holders to institute foreclosure proceedings and that HAMP does not give plaintiff a right to a private cause of action.

Intervenor 1900 11th ST NW LLC ("Intervenor" or "Foreclosure Purchaser") was the highest bidder at the auction and agreed to purchase the Property for $508,000.00. Mot. Intervene ¶ 4, Apr. 4, 2011, ECF No. 12 ("Mot. Inter."). The terms of sale required that Intervenor tender a $15,000 deposit, and stated that the balance of the purchase price would "accrue interest at the rate of 6.125% per annum from the date of sale to the date of receipt of the balance of the purchase price." Mot. Decl. Rel. ¶¶ 7–8. Intervenor argues that plaintiff's suit has interfered with its ability to settle on the Property and seeks declaratory relief to set aside its

contractual obligation to pay interest on the purchase price. Mot. Declaratory Relief ¶ 14, May 2, 2011, ECF No. 13 ("Mot. Decl. Rel.").

## II. LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a complaint. *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). To satisfy this test, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint," *Atherton v. District of Columbia*, 567 F.3d 672, 681 (D.C. Cir. 2009), and grant a plaintiff "the benefit of all inferences that can be derived from the facts alleged." *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994). However, a court may not "accept inferences drawn by plaintiffs if such inferences are unsupported by the facts set out in the complaint." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). In other words, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.*; *see also Atherton*, 567 F.3d at 681 (holding that a complaint must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged").

## III. DISCUSSION

### A. Plaintiff's Quiet Title and Defective Foreclosure Claims

Plaintiff's first and second claims—as well as defendants' motions to dismiss those two claims—depend on the same legal arguments, so the Court will consider them together.[2] In

---

[2] Defendant David Prensky fully incorporated the arguments of Capital One's Motion to Dismiss into his own. Mot. Def. Prensky Dismiss Compl., Jan. 21, 2011, ECF No. 7. ("Prensky Mot. Dismiss"). Though Prensky's presence as a defendant may raise its own issues, Capital One's arguments and motions are sufficient to dismiss both defendants, so the Court will not discuss Prensky and Capital One separately.

essence, plaintiff argues that because defendant Capital One was not the Note holder of record and did not properly record the assignment of the Note, the foreclosure was defective and invalid. Compl. ¶¶ 17, 24. Defendants have moved to dismiss, arguing (1) that because the District of Columbia is a non-judicial foreclosure jurisdiction, they are not required to demonstrate their standing to foreclose, and (2) that because they were the Note holder, the foreclosure was proper. In her opposition, plaintiff argues (1) that the Note was not properly assigned to Capital One, and (2) that the D.C. Attorney General's *Statement of Enforcement Intent Regarding Deceptive Foreclosure Sale Notices*, Reply Mem. Supp. Capital One, N.A.'s Mot. Dismiss. Pl.'s Compl. Ex. A, Feb. 22, 2011, ECF No. 10-1 ("Statement of Enforcement Intent"), introduced a binding requirement that the assignment of all notes must be recorded for a foreclosure action to be valid. These arguments fail, and plaintiff's first two claims will be dismissed.

The District of Columbia is a non-judicial foreclosure jurisdiction, which allows foreclosure pursuant to a "power of sale provision contained in any deed of trust." D.C. Code § 42-815. Plaintiff does not challenge this assertion, and the Deed here unquestionably contains such a provision. Deed ¶ 22 ("If the default is not cured on or before the date specified on the notice, Lender at its option . . . may invoke the power of sale and any other remedies permitted by Applicable Law."). Neither does plaintiff contest the fact that Capital One is in possession of the Note, instead questioning how Capital One came into possession. According to the Note, B.F. Saul negotiated it to Chevy Chase Bank, F.S.B. ("Chevy Chase"), and at some point Chevy Chase indorsed it in blank.[3] Note at 2. In February 2009, Capital One purchased Chevy Chase, assuming the rights and obligations of Chevy Chase as part of that purchase, including plaintiff's

---

[3] An indorsement in blank is essentially a stamp that indorses an instrument without specially indorsing it to a specific party. Usually it makes that instrument payable to the bearer and transfers with it legal title to security attached to the instrument. 15A Am. Jur. 2d Commercial Code § 105 (2011); *see also* U.C.C. § 8-304(a).

Note, of which Capital One became holder. Def. Capital One's Mot. Dismiss at 6, Jan. 21, 2011, ECF No. 6 ("Cap. Mot. Dismiss"). This transfer was expressly permitted by the terms of the Note: "the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the 'Note Holder.'" Note ¶ 1. Plaintiff does not argue that the Note was not transferred to Capital One when it purchased Chevy Chase, but instead that an indorsement in blank is not an endorsement under the terms of D.C. Code § 28:3-201, and that because the Note was indorsed in blank, the transfer from Chevy Chase to Capital One was not one which—in the absence of recordation—gave Capital One "holder" status. This is incorrect. A person becomes the holder of an instrument when it is negotiated to them, with negotiation defined as "a transfer of possession, whether voluntary or involuntary, of an instrument by a person other than the issuer to a person who thereby becomes its holder." D.C. Code § 28:3-201. If an instrument is indorsed in blank—as was the Note here— it "may be negotiated by transfer of possession *alone* until specially indorsed." D.C. Code § 28:3-205 (emphasis added).

It is not true, as plaintiff argues, that "there is no endorsement on the Note at all, just an invalid recording of the mortgage instrument with the Record of Deeds." Pl.'s Opp. at 3. The Note is indorsed, albeit in blank, Note at 3, and was transferred to Capital One when it purchased Chevy Chase. The D.C. Code provides that "[t]ransfer of an instrument, whether or not the transfer is a negotiation, vests in the transferee any right of the transferor to enforce the instrument," D.C. Code § 28:3-203(b), and under D.C. law the Note's transfer carries with it the security for its payment. *See Smith v. Wells Fargo Bank*, 991 A.2d 20, 29–30 n. 19 (D.C. 2010) ("The transfer of the note carries with it the security, without any formal assignment or delivery, or even mention of the latter."). Capital One was thus the rightful Note holder and a party that

5

could properly enforce its provisions. The D.C. Code permits foreclosure proceedings under a power of sale provision where the "holder of the note secured by such deed of trust" gives written notice of the sale. D.C. Code § 42-815(b). Based on the record before the Court, Capital One provided written notice and in all other ways complied with the requirements for foreclosure proceedings. Thus, the foreclosure was valid.

Plaintiff also argues that the foreclosure is invalid because of the October 27, 2010 Statement of Enforcement Intent by the District of Columbia Attorney General, which suggested—not in the actual Statement but in an online press release accompanying it—that "[a] foreclosure may not be commenced against a D.C. homeowner unless the security interest of the current note holder is properly supported by public filings with the District's Recorder of Deeds." Attorney General Issues Statement on Foreclosures in DC, Office of Attorney General of D.C. (Oct. 27, 2010), http://newsroom.dc.gov/show.aspx/agency/occ/section/2/release/20673. Although the opinion of the Office of the Attorney General is not binding, *see Fed. Sav. & Loan Ass'n v. Fed. Sav. & Loan Ins. Corp.*, 589 F.2d 658, 666 (D.C. Cir. 1978) ("A general statement of policy . . . does not establish a binding norm."), plaintiff's argument would fail even if the opinion did bind the Court. In a subsequent release, the Attorney General answered questions about the Statement of Enforcement Intent, and unequivocally stated that "[a] failure to record the note, by itself, will not invalidate the foreclosure." Reply Mem. Supp. Capital One, N.A.'s Mot. Dismiss. Pl.'s Compl. Ex. B at 2, Feb. 22, 2011, ECF No. 10-2 ("Q&A"). On December 17, the Attorney General published another statement, in which he clarified that:

> a noteholder's right to foreclose does not depend on compliance with the recordation obligations set forth in D.C. Official Code § 47-1431(a). Consequently, the Office of the Attorney General does not intend to challenge the validity of completed foreclosure sales—whether completed in the past or future—based on non-compliance with these statutory recordation obligations.

6

Reply Mem. Supp. Capital One, N.A.'s Mot. Dismiss. Pl.'s Compl. Ex. C at 1, Feb. 22, 2011, ECF No. 10-3 ("Sec. Statement of Enforcement Intent"). Although the transfer of instruments may be governed by recordation requirements, failure to meet those requirements will not in and of itself invalidate a foreclosure proceeding.

Plaintiff offers no further arguments to support her claims. Capital One possesses the Note, and Chevy Chase's transfer of the Note was a valid negotiation that granted Capital One the right to enforce its provisions. Leake does not allege that the foreclosure proceedings were improper in any other way, and the Court has not seen any evidence to suggest that they were. Defendants Capital One properly foreclosed upon defendant's property, and so plaintiff's quiet title and defective foreclosure claims will be dismissed for failure to state a claim upon which relief can be granted.

### B. Plaintiff's Standing to Assert a Wrongful Foreclosure Claim Under the Home Affordable Modification Program

Plaintiff also argues that she was in the process of modifying her loan under the Home Affordable Modification Program ("HAMP"), and that "[t]he U.S. Treasury rules that govern the modification process clearly state that when a homeowner is in the loan modification process the lender shall cease all foreclosure activity." Compl. ¶ 32. Although this specific issue has never been addressed in this Circuit, "[o]ther district courts have consistently held that the Home Affordable Modification Program does not provide borrowers with a private cause of action against lenders for failing to consider their application for loan modification, or even to modify an eligible loan." *Simon v. Bank of America, N.A.*, 2010 U.S. Dist. LEXIS 63480, at \*25 (D. Nev. June 23, 2010); *see also Marks v. Bank of America, N.A.*, 2010 U.S. Dist. LEXIS 61489, at \*16 (D. Ariz. June 22, 2010) ("Nowhere in the HAMP Guidelines, nor in the EESA [Emergency Economic Stabilization Act], does it expressly provide for a private right of action. Rather,

7

Congressional intent expressly indicates that compliance authority was delegated solely to Freddie Mac. By delegating compliance authority to one entity, Freddie Mac, Congress intended that private cause of action was not permitted."); *Zendejas v. GMAC Wholesale Mortg. Corp.*, 2010 U.S. Dist. LEXIS 59793, at *8–9 (E.D. Cal. June 16, 2010) (holding that plaintiffs could not dispute foreclosure based on a HAMP violation because borrowers "are incidental beneficiaries of [the HAMP Agreement] and do not have enforceable rights under the contract." (quoting *Escobedo v. Countrywide Home Loans, Inc.*, 2009 U.S. Dist. LEXIS 117017, at *7 (S.D. Cal. Dec. 15, 2009))). Plaintiff does not address this argument in her response to Capital One's Motion to Dismiss, so the Court will treat it as conceded. *Peter B. v. CIA*, 620 F. Supp. 2d 58, 69 (D.D.C. 2009). This is just as well, as the Court has found no authority—legislative, judicial or otherwise—to support plaintiff's argument. HAMP does not provide individual borrowers with a private right of action against lenders. Plaintiff's third claim is dismissed.

### C. Intervenor's Motion for Declaratory Relief

1900 11th ST NW LLC purchased the Property at the October 26 foreclosure sale, but has not yet closed on the deal because of plaintiff's suit. Because it has not closed, the balance of the purchase price is still accruing interest. Intervenor argues that it should not have to pay interest on a piece of property that it cannot in good faith take possession of, and seeks declaratory relief "abating any interest accrual on the unpaid purchase price from December 8, 2010 through the expiration date of any appeal period following a final order in this proceeding." Mot. Decl. Rel. ¶ 14. In its Motion for Declaratory Relief, Intervenor assumed that defendants consented to declaratory relief. *Id.* at ¶ 15. They apparently did not, as Intervenor filed a subsequent notice removing the consent of Capital One, and Capital One has filed an opposition to Intervenor's

Motion for Declaratory Relief on May 20, 2011. Opp. Intervenor-Defendant's Mot. Decl. Rel., ECF No. 16 ("Opp. Mot. Decl. Rel.").

While the Court certainly empathizes with Intervenor's situation, it cannot grant relief contrary to the clear terms of the contract. *See Pillsbury Winthrop Shaw Pittman LLP v. Capitol Hill Group*, 447 B.R. 387, 394–95 (D.D.C. 2011) ("The task of the Court . . . is to give effect to the parties' intent, and where the language of the particular agreement or provision is clear and unambiguous, the Court must assume that the meaning ordinarily ascribed to the words used reflects the intentions of the parties."). By signing the contract, Intervenor agreed that "[t]he balance of the purchase price . . . shall accrue interest at the rate of 6.125% per annum from date of sale to the date of receipt of the balance of the purchase price," and it concedes that Capital One has not yet received the balance of the purchase price. Opp. Mot. Decl. Rel. Ex. A at 1, ECF No. 16-1 ("Contract"). The contract contains no exceptions to the interest clause, and the only possible interpretation is that the balance continues to accrue interest regardless of plaintiff's suit.

Both parties offer scant briefs on the issue, and Intervenor's only real argument is that it would be inequitable for it to pay interest where it has no control over plaintiff's lawsuit. But as Capital One argues, it does not have control over plaintiff's lawsuit either. If the Court granted Intervenor the relief it seeks, Capital One would be prejudiced by the loss of interest to which it is contractually entitled. Although Intervenor has—perhaps wisely—foregone closing on the Property until resolution of this suit, Capital One points out that Intervenor "does not allege that it would be impossible to close on the property, but merely . . . imprudent."[4] Opp. Mot. Decl. Rel. at 3 n.2. Intervenor signed the contract with the understanding that it would be able to enjoy

---

[4] In its motion, Intervenor states that "[t]he pendency of this action caused the Foreclosure Purchaser forbear [sic] from conducting settlement on the Property until this matter is resolved," but it does not argue that it *could not* settle until this suit was finally adjudicated. Mot. Decl. Rel. ¶ 12.

the Property immediately and that the only interest that would accrue would arise from its own inability to promptly pay. It may seem unfair that its expenses have been amplified by plaintiff's suit, but the equities are not so tilted in Intervenor's favor as to warrant relief in contradiction of the clear terms of the contract. Any remedy Intervenor may have lies with the plaintiff. The motion for declaratory relief is denied.

## IV. CONCLUSION

In the wake of a subprime mortgage crisis characterized by predatory lending and indiscriminate, obfuscated mortgage trading, plaintiff was concerned about the validity of Capital One's claim to the Note on her house. And though this Court would not hesitate to permit a suit where the ownership, location, or transference of the Note was in question, here there is a straight line from B.F. Saul to Chevy Chase to Capital One. Capital One's actions have been aboveboard from the outset; mere failure to record the assignment of a Note is not sufficient to invalidate an otherwise proper foreclosure, nor does the HAMP provide plaintiff with a private cause of action. Though the Court empathizes with Intervenor's unenviable position, the clear terms of the contract and near-equal balance of equities counsel against granting declaratory relief. Defendants' motions to dismiss are granted and plaintiff's claims dismissed, while Intervenor's motion for declaratory relief is denied.

A separate Order and Judgment consistent with these findings shall issue this date.

Signed by Royce C. Lamberth, Chief Judge, on July 25, 2011.